CLERK'S OFFICE U.S. DIST. COURT
AT BIG STONE GAP, VA
FILED

DEC 1 2 2008

JOHN F CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

SIERRA CLUB and          )
SOUTHERN APPALACHIAN      )   Civil Action No. 2:08cv00036
MOUNTAIN STEWARDS, INC.,  )
    Plaintiffs,          )
                         )
v.                        )   **MEMORANDUM OPINION**
                         )
DIRK KEMPTHORNE, et al.   )   BY: GLEN M. WILLIAMS
                         )   SENIOR UNITED STATES DISTRICT JUDGE
    Defendants.          )

At the outset, I must note that this case arises under certain factual circumstances that are egregious in nature, in that 12 large rocks, described as the size of watermelons, rolled onto the property of Gary D. Bowman, as a result of the logging activities being performed nearby. Bowman was understandably concerned, not only for the potential environmental ramifications caused by the activities performed on the land in question, but also because the activities posed a legitimate threat to Bowman's property and to the safety of his family. As a result, the Sierra Club, a national nonprofit environment-friendly corporation, and Southern Appalachian Stewards, Inc., a local nonstock membership corporation based in Appalachia, Virginia, of which Bowman is a member, brought this action against Dirk Kempthorne, the Secretary of the Interior, alleging that the activities violated federal law.

-1-

The plaintiffs, Sierra Club and Southern Appalachian Stewards, Inc., ("SAMS"), originally brought this action against the defendant, Dirk Kempthorne, the Secretary of the Interior, ("the Secretary"), to obtain an order compelling the Secretary to issue a cessation order requiring Penn Virginia Operating Company, LLC, ("Penn Virginia"), Mountain Forest Products, LLC, ("MFP"), and "any others acting in concert with them to cease removing vegetation, constructing or improving roadways, or conducting any other 'surface coal mining operations,' as that term is defined by statute and regulation, on land within the proposed permit boundaries delineated in Permit Application No. 1003841," which is pending before the Virginia Department of Mines, Minerals & Energy, ("DMME").[1]  (Docket Item No 1.) As alleged in the Complaint, the plaintiffs claim that the defendants' activities have violated the specific terms of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201 *et seq.*, ("SMCRA").

On July 29, 2008, the plaintiffs filed a motion which the Magistrate Judge properly construed as a motion for preliminary injunction, in which the plaintiffs

---

[1]In this case, the pending permit (Application No. 1003841) was filed by A&G Coal Corporation, ("A&G"), with DMME on February 21, 2007. A&G and Penn Virginia had a lease agreement dated December 29, 2003, that granted A&G the right to conduct surface coal mining operations on the proposed permit area.

The court notes that Penn Virginia and MFP entered into an agreement on June 16, 2008, that permitted MFP to remove vegetation, including harvestable timber, from the property in question. While the agreement allowed MFP to perform such activities within the proposed permit area, the agreement was not limited to that particular area, as MFP was given the right to remove the timber from property outside of the boundaries of the permit. MFP hired an independent contractor, Timberline, to conduct the timbering activities.

sought the same relief as requested in the Complaint. (Docket Item No. 10.) Shortly thereafter, on August 1, 2008, the Magistrate Judge held a hearing and subsequently issued a Report and Recommendation dated August 2, 2008, recommending that the court grant the preliminary injunction and ordering the Secretary to issue a cessation order.[2] (Docket Item No. 17.) On August 4, 2008, the undersigned, based upon the findings as set forth in the Magistrate Judge's Report and Recommendation, granted the plaintiffs' motion for a preliminary injunction and, thus, ordered the Secretary to issue an appropriate cessation order. (Docket Item No. 23.) Following the court's ruling, both Penn Virginia and MFP filed motions to dissolve the preliminary injunction. (Docket Item Nos. 33, 34.) In addition, on August 5, 2008, both Penn Virginia and MFP filed motions to dismiss. (Docket Item Nos. 30, 32.) On August 7-8, 2008, a hearing was held before the Magistrate Judge as to the motions to dissolve, at which time evidence was presented by both the plaintiffs and the defendants.

On August 14, 2008, the plaintiffs filed a motion to amend their original Complaint, (Docket Item No. 51.), and on the same day, the plaintiffs filed a motion for summary judgment. (Docket Item No. 52.) By Order dated August 15, 2008, the Magistrate Judge denied the motions to dissolve the preliminary injunction. (Docket Item No. 56.) Then, on August 29, 2008, the Secretary filed a motion to dismiss, or, in the alternative, a motion for summary judgment. (Docket Item No. 70.) Furthermore, on September 10, 2008, the court granted the plaintiffs' motion to file

---

[2]Following the issuance of the Magistrate Judge's Report and Recommendation, Penn Virginia and MFP moved to intervene as defendants in the proceedings. (Docket Item Nos. 19, 21.) The court granted the motions to intervene on August 5, 2008. (Docket Item No. 28.)

an amended complaint, which included a specific request that the court issue a permanent injunction. (Docket Item No. 78.) Additionally, the court ordered that the defendants' motions to dismiss and motions for summary judgment would be treated as being filed in response to the Amended Complaint. The parties then submitted the motions to the Magistrate Judge, agreeing to submit the entire case to the Magistrate Judge for a decision on the merits.

On October 15, 2008, United States Magistrate Judge Pamela Meade Sargent issued a Report and Recommendation, (Docket Item No. 82), ("Report"), recommending that the court deny the motions to dismiss, deny the plaintiffs' motion for summary judgment and grant the defendants' motions for summary judgment. Furthermore, the Magistrate Judge also recommended that the court vacate the preliminary injunction, which was entered on August 4, 2008. In response, on October 29, 2008, Penn Virginia and MFP timely filed objections to the Magistrate Judge's Report, noting that while both Penn Virginia and MFP agreed with the "ultimate recommendation," the defendants specifically objected to the Magistrate Judge's finding that the court has subject matter jurisdiction. (Docket Item No. 83.)

While I concur with the Magistrate Judge's recommendations and affirm her findings of fact, I will nonetheless address the findings as to the defendants' motions to dismiss and take into consideration the defendants' objections to the Magistrate Judge's Report. Moreover, although the plaintiffs did not object to the Magistrate Judge's recommendations as to the merits of the case, I will take this opportunity to further discuss the Magistrate Judge's findings regarding those issues. For the purposes of this opinion, the facts, as stated in the Magistrate Judge's Report, shall

be adopted.

## II. Discussion

### A. Relevant Law Under SMCRA & Federal Regulations

In order to fully comprehend the actions asserted by the plaintiffs, it is necessary to revisit the relevant law as stated under the SMCRA and within the federal regulations. As accurately summarized in the Magistrate Judge's Report, 30 U.S.C. § 1270 clearly allows "citizen suits" under the SMCRA. Pursuant to § 1270 of the SMCRA,

> any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this Act against the Secretary . . . to the extent permitted by the eleventh amendment to the Constitution where there is alleged a failure of the Secretary . . . to perform any act or duty under this Act which is not discretionary with the Secretary . . . .

30 U.S.C. § 1270(a), (a)(2). Furthermore, § 1270 sets forth certain limitations upon a parties' ability to bring an action under § 1270(a)(2), noting that no such action may be commenced

> prior to sixty days after the plaintiff has given notice in writing of such action to the Secretary . . . except that such action may be brought immediately after such notification . . . where the violation or order complained of constitutes an imminent threat to the health or safety of the plaintiff or would immediately affect a legal interest of the plaintiff.

-5-

30 U.S.C. § 1270(b)(2). It should also be noted that 30 U.S.C. § 1271(a)(2) states that

> [w]hen, on the basis of any Federal inspection, the Secretary or his authorized representative determines that any condition or practices exist, or that any permittee is in violation of any requirement of this Act or any permit condition required by this Act, which condition, practice, or violation also creates an imminent danger to the health or safety of the public, or is causing, or can reasonably be expected to cause significant, imminent environmental harm to land, air, or water resources, the Secretary or his authorized representative shall immediately order a cessation of surface coal mining and reclamation operations or the portion thereof relevant to the condition, practice, violation.

30 U.S.C. § 1271(a)(2). The Secretary's regulations provide that surface coal mining conducted by any person "without a valid surface coal mining permit" amounts to a condition or practice that "causes or can reasonably be expected to cause significant imminent environmental harm to land, air, or water resources . . . ." 30 C.F.R. § 843.11(a)(2) (2007).

By virtue of questioning during the hearing on this matter, as well as the concessions noted on brief, the Magistrate Judge was able to ascertain that both parties agree that the Secretary has a nondiscretionary duty to issue a cessation order if, based on a federal inspection, the Secretary or his authorized representatives determine that surface coal mining operations are being conducted without a valid permit. *See* 30 U.S.C. § 1271(a)(2). In this case, both parties are also in agreement that no surface coal mining permit for the property in question has been issued, as the permit application is currently pending before the DMME.

-6-

The court is currently faced with competing arguments as to whether the activities complained of by the plaintiffs are indeed "surface coal mining operations," as that term is defined under the relevant statutes and regulations. The plaintiffs contend that the activities being performed on the land in question are "surface coal mining operations." Thus, since no permit has been issued, the plaintiffs argue that the Secretary has a nondiscretionary duty to issue a cessation order to stop the activities. As such, the plaintiffs argue that this particular nondiscretionary duty is enforceable by this court pursuant to the "citizen suit" provision set forth in 30 U.S.C. § 1270(a)(2). Conversely, the defendants argue that the activities are not "surface coal mining operations" and that the Secretary therefore has no duty to issue a cessation order. Moreover, the defendants assert that this court cannot compel the Secretary to issue a cessation order because the court lacks subject matter jurisdiction.

## B. Motions to Dismiss

The defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In the defendants' motions, they contend that, under the SMCRA, once the Secretary approves a state's surface mining regulatory program, the state then becomes a "primacy" state, meaning that the state assumes exclusive jurisdiction over the regulation of surface coal mining within its borders. *See* 30 U.S.C. § 1253(a); 30 C.F.R. § 946.10 (2007). Thus, because Virginia is a primacy state, the defendants argue that the determination of whether MFP's activities in question constitute "coal surface mining operations" is a matter that should be taken up in state court, not federal court. As such, the defendants argue that this determination should be made by the proper state regulatory officials and not by this

court.

The court will first address the defendants' argument that this court lacks subject matter jurisdiction to hear this matter. A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of a complaint. When addressing such a motion, the court must initially determine whether the motion is a facial or factual challenge, as there are two distinct ways to present a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), each of which trigger different standards of review. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). First, if the Rule 12(b)(1) motion is a facial challenge attacking subject matter jurisdiction by asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," then "the facts alleged in the complaint are assumed to be true and the plaintiff . . . is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration." *See Adams*, 697 F.2d at 1219. Second, if the 12(b)(1) motion is a factual challenge, refuting the alleged jurisdictional basis of a complaint by asserting that, although facially adequate, the allegations are factually untrue, the district court may then consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986) (citing *Adams*, 697 F.2d at 1219.)

In the case at hand, it appears evident that the defendants' Rule 12(b)(1) motions constitute a facial challenge, arguing that the facts, as alleged in the Complaint, failed to establish subject matter jurisdiction. Accordingly, since this motion is a facial challenge attacking the court's subject matter jurisdiction, the court will assume that

-8-

the facts, as alleged in the Complaint, are true. *See Adams*, 697 F.2d at 1219. Here, the plaintiffs filed this action pursuant to 30 U.S.C. § 1270 of the SMCRA, seeking an order compelling the Secretary to issue a cessation order requiring MFP, Penn Virginia and any others acting in concert within them to cease any "surface coal mining operations" within the proposed boundaries of the pending permit. In particular, the plaintiffs assert that this court has jurisdiction over this matter "pursuant to 30 U.S.C. § 1270(a), which states that in cases seeking a[n] order compelling the Secretary to comply with the [SMCRA], '[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties.'" (Complaint at 1-2.) In the alternative, the plaintiffs assert that this court possesses proper federal question jurisdiction pursuant to 28 U.S.C. § 1331. (Complaint at 2.) As a result, the defendants moved to dismiss for lack of subject matter jurisdiction, noting that Virginia, as a primacy state, has exclusive jurisdiction over surface mining operations within its borders. Thus, the defendants contend that there is no violation of federal law, as this is an issue of state law.

As noted by the Magistrate Judge, the United States Court of Appeals for the Fourth Circuit plainly stated that the fact the SMCRA contains language that grants primacy states, such as Virginia, "'exclusive regulatory jurisdiction over the regulation of surface coal mining and reclamation operations'" does not mean that such a state also retains exclusive adjudicatory jurisdiction. *See Molinary v. Powell Mountain Coal Co., Inc.*, 125 F.3d 231, 236 (4th Cir. 1997) (quoting 30 U.S.C. § 1253(a)). To be precise, the Fourth Circuit unequivocally stated that "[e]xclusive regulatory jurisdiction simply does not encompass exclusive adjudicatory jurisdiction." *Molinary*, 125 F.3d at 236. The *Molinary* court further explained, "[c]ommon sense dictates that a

government's acts in regulating a subject are distinctly different than its acts in adjudicating a party's rights related to the subject." 125 F.3d at 236. The court concluded that, under 30 U.S.C. § 1270(f), federal district courts had jurisdiction to hear "citizen suits" for damages against surface mine operators of "any rule, regulation, order, or permit issued pursuant [SMCRA]." *See Molinary*, 125 F.3d at 236 (quoting 30 U.S.C. § 1270(f)). This court recognizes that the plaintiffs' action in the case at hand was not brought pursuant to § 1270(f) as it was in *Molinary*; however, the court makes the logical conclusion that if a "citizen suit" action to recover damages from a surface mine operator under § 1270(f) creates a federal cause of action and is grounds for jurisdiction, then the district court also has jurisdiction to hear actions under § 1270(a)(2) when it is alleged that a citizen has been adversely affected by a failure of the Secretary to perform a nondiscretionary duty.

The undersigned also acknowledges the Fourth Circuit's ruling in *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275 (4th Cir. 2001). In that case, the Fourth Circuit held that the Eleventh Amendment to the United States Constitution bars citizen suits brought in federal court when the suit seeks to compel a state official to act in accordance with state law. *See Bragg*, 248 F.3d at 293-99. In *Bragg*, the intervening coal companies and coal associations challenged the district court's subject matter jurisdiction. 248 F.3d at 298-99. However, the court stressed that "[j]urisdiction is proper unless 'the cause of action alleged is *so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction." *See Bragg*, 248 F.3d at 299 (citations omitted) (emphasis in original). Moreover, the *Bragg* court recognized the established precedent in *Molinary*, stating that "[i]t is now settled that 30 U.S.C. § 1270 confers on federal district courts subject matter jurisdiction over at least some sorts of claims[,]" concluding that the

-10-

court possessed jurisdiction to hear issues pertaining to the Secretary's nondiscretionary duties under the SMCRA. 248 F.3d at 299 (citing *Molinary*, 125 F.3d at 235-37).

As the aforementioned binding precedent indicates, and as outlined by the Magistrate Judge, there are several provisions contained in the SMCRA that confer jurisdiction to the federal courts, even in situations where the state involved is a primacy state that has exclusive regulatory jurisdiction. In addition, as observed in the Magistrate Judge's Report, the SMCRA provides for federal intervention in situations where a citizen's complaint alleges "an imminent danger of significant environmental harm." *See* 30 U.S.C. § 1271(a)(1). In such situations, although a state has exclusive regulatory authority over surface mining activities, the Secretary can nonetheless intervene and conduct an immediate federal inspection based upon the citizen's allegations. *See* 30 U.S.C. § 1271(a)(1). I also concur with the Magistrate Judge's observation that 30 U.S.C. § 1253(a), which sets forth information regarding state programs, precisely notes that a primacy state's exclusive jurisdiction does not preclude the Secretary's obligation to inspect and act pursuant to § 1271. *See* 30 U.S.C. § 12539(a).

Thus, after reviewing the recommendation and findings of the Magistrate Judge, the arguments presented by each party and the objections to the Magistrate Judge's Report filed by the defendants, I am of the opinion that the Magistrate Judge was correct in determining that this court has subject matter jurisdiction. Accordingly, I hereby deny the defendants' Rule 12(b)(1) motions to dismiss.

Next, the court turns to the defendants' motions to dismiss pursuant to Rule 12(b)(6). A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In considering such as motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff. *See, e.g., De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421, (1969)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

For quite some time this court has cited *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957), for the proposition that in order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of their claim entitling them to relief. *See also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the Supreme Court recently revisited the proper standard of review for a motion to dismiss under Rule 12(b)(6) and stated that the "no set of facts" language from *Conley* has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007).

In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide 'grounds' of [their] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "factual allegations must be enough to raise a right to relief above the speculative level." *See Twombly*, 123 S. Ct. at 1965 (citations omitted). Additionally, the Court established

-12-

a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable, but that the relief is plausible. *See Twombly*, 125 S. Ct. at 1965-69.

In this case, the defendants essentially claim that the activities complained of by the plaintiffs do not constitute surface coal mining activities. Thus, according to the defendants, the Secretary therefore had no duty to issue a cessation order. This type of argument, i.e. whether or not the Secretary had discretion to determine if the activities in question constituted surface coal mining, in and of itself, goes to the merits of this case. Because the parties agreed to submit the entire case to the Magistrate Judge for a decision on the merits, the Magistrate Judge did not specifically address the defendants' motions to dismiss in the context of a traditional Rule 12(b)(6) motion, but, instead, simply addressed the defendants' Rule 12(b)(1) motions. The court notes that a dismissal for failure to state a claim under Rule 12(b)(6) is a "judgment on the merits." *See Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 (1981) (citing *Angel v. Bullington*, 330 U.S. 183, 190 (1947); *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Thus, by submitting this issue for the court's determination on the merits, the eventual outcome would possibly be the same, whether it is considered under a Rule 12(b)(6) standard or strictly determined on the merits, with no guiding standard of review. The court notes that the defendants were correct in raising this issue in a Rule 12(b)(6) motion. As explained in *Bragg*,

> [i]t may be the case, as the coal companies claim, that further legal analysis would have revealed that the duties alleged were either "discretionary" or not "under this chapter." But that type of argument would be properly raised not in a Rule 12(b)(1) motion to dismiss for

-13-

lack of jurisdiction, but rather in a Rule 12(b)(6) motion to dismiss for failure to state a claim.

248 F.3d at 299. Nevertheless, because the parties agreed to submit the entire case to the Magistrate Judge on the merits, it could be argued that the defendants' Rule 12(b)(6) motions have essentially been rendered moot. Therefore, the court will not address the merits of the case under a Rule 12(b)(6) standard of review.

Accordingly, for the reasons stated above, the defendants' motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) are hereby denied.

## C. The Merits of the Case

While the court does agree with the substance of the Magistrate Judge's recommendations as to the merits of the case, the court notes that the Magistrate Judge recommended that the plaintiffs' motion for summary judgment be denied and that the defendants' motions for summary judgment be granted. However, because the parties mutually agreed to submit the entire case to the Magistrate Judge on the merits, the undersigned finds that it was thus unnecessary for the court to making a ruling as to the competing motions for summary judgment. Furthermore, although neither party filed objections to the Magistrate Judge's findings and recommendations as to the merits of the case, the undersigned will nonetheless briefly discuss those findings.

Because Virginia is a primacy state, Virginia law controls the determination of whether MFP's activities constitute surface coal mining operations. *See Bragg*, 248 F.3d at 288-89; 30 U.S.C. §§ 1252, 1253, 1254. According to the Virginia Coal

-14-

Surface Mining Control and Reclamation Act, ("VSMCRA"), "coal surface mining activities" are "[a]ctivities conducted on the surface of lands in connection with a surface coal mine . . . ." Va. Code Ann. § 45.1-229. This definition is virtually identical to the definition of "surface coal mining operations," as defined under the SMCRA, and the definition of "surface coal mining operations," as defined in the Secretary's regulations. *See* 30 U.S.C. § 1291(28)(A); 30 C.F.R. § 700.5 (2007). The VSMCRA contains a provision strikingly similar to 30 U.S.C. § 1256(a), in that it also prohibits engaging in, or carrying out, coal surface mining operations "without having first obtained a permit to engage in the operations issued by the Director, in accordance with the approved state regulatory program." *See* Va. Code Ann. § 45.1-234(A). Pursuant to Virginia Code § 45.1-235(D), each applicant for a coal surface mining permit must submit an "operations plan" within its permit application. Here, A&G filed its permit prior to the commencement of MFP's logging activities and included a general operation plan within its permit application that stated, "[c]learing and grubbing operations will be conducted in advance of mining operations. Economically harvestable timber will be removed as a separate operation."

The plaintiffs contend that, based upon these requirements, the defendants are unlawfully conducting surface coal mining operations without a valid permit. Specifically, as adequately characterized and summarized by the Magistrate Judge,

> The plaintiffs argue that, because the application was filed prior to the commencement of MFP's logging activities, and because the application seeks permission to clear vegetation and harvestable timber in advance of mining operations, the court should find that the logging activities which have occurred on this property are, as a matter of law, "in connection with" a surface coal mine and, therefore, are surface coal

-15-

mining operations being conducted without the proper permit. The plaintiffs concede that they may prevail in this action only if the court finds that the logging activities that have occurred on the permit area are "coal surface mining operations" as a matter of law. The plaintiffs further concede that, under 30 U.S.C. § 1270(a)(2), the court may compel the Secretary to act only in the "most clear-cut, non-discretionary obligations." Therefore, if the Secretary had discretion to determine whether these logging activities are "coal surface mining operations," the plaintiffs concede they cannot prevail. Thus, the court must determine whether either the controlling federal or state statutes or regulations require the Secretary to find that the logging activities at issue were "coal surface mining operations."

(Report at 30.) In an effort to avoid a repetitious recital of the Magistrate Judge's analysis as to the merits of this case, the court notes that it is in total agreement with the proposed findings of fact and the recommended disposition of this case. However, the undersigned will briefly review the Magistrate Judge's analysis, while taking the opportunity to note my concurrence and offer further support for her findings and recommendations.

The plain language of 30 U.S.C. § 1271(a)(2) provides that the Secretary has a nondiscretionary duty to act only when, on the basis of a federal inspection, the Secretary or his authorized representative determines that a condition exists which creates imminent danger to the health and safety of the public or is causing, or reasonably can be expected to cause, imminent environmental harm to land, air or water resources. The court specifically agrees with the Magistrate Judge's assessment that the fact that the Secretary or his authorized representative is to "determine" whether a harmful condition exists, demonstrates that the Secretary or his authorized representative possesses discretion in determining whether the

-16-

activities being conducted on the land in question amounted to surface coal mining. Accordingly, as stated in the Magistrate Judge's Report, "the language of the statute itself appears to give the Secretary the discretion to decide whether a condition exists which would compel him to act." (Report at 31.)

The facts before the court show that the Secretary's authorized representatives in the Big Stone Gap, Virginia, Area Office of the Office of Surface Mining Reclamation and Enforcement, ("OSM"), found that no enforcement action was necessary because "the alleged disturbances [were] related to logging and [were] not being conducted[] by or on behalf of, a coal mining operation." Thus, in reviewing an agency's actions, the Magistrate Judge correctly noted that the court must determine whether the agency acted within the scope of its authority and, in order to do so, the court must first ascertain whether Congress has spoken clearly to the issue. *See Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 439 (4th Cir. 2003). Here, it is apparent that the SMCRA has not "spoken clearly on the issue." The SMCRA's definition of "surface coal mining" and the specific activities the statute lists that qualify as "surface coal mining" fail to include logging practices or the clearing of vegetation in advance of mining. *See* 30 U.S.C. § 1291(28). Therefore, the SMCRA does not precisely address the critical issue of whether logging activities constitute surface coal mining operations when the logging is being performed on property where a permit to conduct surface coal mining is pending.

Furthermore, as explained in the Report, the Secretary's own regulations also fail to address the relevant issue, as the regulations define "surface coal mining operations" just as the SMCRA does, with no mention of logging or the removal of

-17-

vegetation in advance of mining operations as a specific "surface coal mining" activity. The court must also examine the relevant Virginia law in order to determine whether the Virginia legislature has addressed the issue. However, the VSMCRA contains an identical statutory definition of "coal surface mining operations" and its listing of specific activities that constitute "coal surface mining" makes no mention of logging activities or of vegetation clearing.

After a review of the Magistrate Judge's Report, the arguments asserted by the parties and the applicable federal and state statutory and regulatory language, it is readily apparent that the issue of whether the logging activities of MFP amount to "coal surface mining operations" has not been addressed. In this case, once the representative from OSM conducted the investigation and concluded that the logging activities were not "coal surface mining operations," the court is of the opinion that there was no nondiscretionary duty that the Secretary was required to act upon. The Magistrate Judge properly relied on the standard set forth in *Kentuckians for Commonwealth*, where the court explained that when an agency is left to interpret its own regulations, as was the case here, "the agency's interpretation is 'controlling unless plainly erroneous or inconsistent with the regulation.'" 317 F.3d at 439 (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

In addition, the Magistrate Judge also recognized that the substantial deference given to an agency's interpretation of its own regulations is particularly applicable when that interpretation is based on the "agency's unique expertise and policymaking prerogatives." *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150-51 (1991). Here, the OSM obviously possesses a "unique expertise"

-18-

as to the subject matter and the activities involved. As such, because the court does not view the OSM's determinations as "plainly erroneous or inconsistent with the regulation," the court is of the opinion that the Magistrate Judge was justified in finding that the Secretary was under no duty to issue a cessation order pursuant to § 1271(a)(2) and in recommending that the preliminary injunction should be lifted.

In support of the above-mentioned findings, the undersigned will now specifically discuss some additional factors that further demonstrate that the Secretary's determination that the activities in question did not constitute "coal surface mining operation" was not "plainly erroneous or inconsistent with the regulation." While the court does not suggest that such an interpretation can be made from the Magistrate Judge's Report, the undersigned wants to make perfectly clear that this opinion does not stand for the proposition that timber removal will never constitute surface coal mining operations or activities. Instead, the undersigned strongly states that, in certain circumstances, the removal of timber and vegetation in preparation of mining activities may very well constitute surface coal mining. However, in this case, the factual circumstances suggest otherwise and indicate that the Secretary's determination was justified.

The court first notes that the undisputed evidence of record reveals no connection between the timbering activities of MFP and the potential mining preparation of A&G. The testimony from the hearing indicates that the timbering operations were conducted by Timberline, an independent contractor that worked at the direction of MFP. The record is devoid of any evidence that A&G conducted any of the timbering operations, or that it contracted to have the timber removed. The

-19-

evidence also indicates that the landowner, Penn Virginia, was aware that it had entered into an agreement giving A&G the right to surface mine the property before it entered into the timber sales agreement with MFP. However, as noted by the Magistrate Judge, there is no evidence that Penn Virginia entered into the timber sales agreement to faciliate, or further, A&G's proposed surface coal mining operations. Instead, based upon the undisputed testimony presented at the hearing, Penn Virginia's decision to enter into the timber sales agreement with MFP was solely an effort to fully maximize the profit potential of the property by contracting to have the timber removed.

The notion that the activities on the property were surface coal mining operations is further flawed when one considers the manner in which the timber removal was conducted by MFP's contractor, as opposed to the manner in which A&G typically removes timber in preparation of surface coal mining. Larry Jackson, Penn Virginia's Manager of Timber Operations, testified that the timber sale agreement with MFP was entered into for profit and to manage its timber properties, explaining that the agreement indicated that the timber would be clear-cut from the property, meaning that all trees would be removed down to stumps at a height of five inches or less. According to his testimony, this process of timber removal, which leaves behind live stumps to grow, would assist with future growth and promote reforestation. Jackson also testified that clear-cutting generally created an even-aged timber stand that would lead to faster tree growth and a healthy, strong timber stand. Thus, the evidence shows that the practice generally employed by MFP was clear-cutting.

Conversely, William Shupe, A&G's property manager, testified that, in order to proceed with surface coal mining on the property, A&G would clear the property by performing a process known in the industry as "grubbing." Grubbing means removing all vegetation, including stumps, from the surface of the property. Thus, if the land in question was being timbered specifically for the purpose of surface coal mining, the timbering activities would necessarily include grubbing. However, based upon the testimony presented, it appears that the property was being clear-cut, leaving stumps up to five inches in height behind. Furthermore, Mike Giles, an area inspector for DMME, testified that timbering operations normally did not include grubbing. That being the case, the facts demonstrate that the timbering activities on the property in question were clear-cutting activities that had no connection to A&G and its potential site preparation for surface coal mining. Therefore, this court is of the opinion that, when considering the method used for the sole purpose of timbering, as opposed to the method used in site preparation for surface coal mining, it is reasonable to conclude that the Secretary's determination that the activities were not surface coal mining operations was justified, and not "plainly erroneous or inconsistent with the regulation."

The court also notes that MFP's timbering operation removed timber that was outside the boundaries of A&G's proposed surface mining permit. Thus, it is clear that MFP's timbering activities were not focused on the area in which A&G intended to surface mine. Instead, MFP's practices show that it was concerned with clear-cutting *all* of the harvestable timber for profit, without regard to the proposed surface mining area. In my opinion, if MFP was working in concert with A&G, or if the timbering was truly being conducted as site preparation for surface coal mining, the

-21-

timbering activities would have centered around, and focused upon, the timber within the permit boundaries. However, in this case, the evidence of record shows that clear-cutting for timbering purposes was performed outside of the proposed surface mining permit boundaries.

As mentioned previously, this opinion is not intended to imply that timber removal and related logging activities will never qualify as site preparation for surface coal mining. Walt Wieder, a surface mining reclamation inspector for OSM, testified that a critical factor in determining whether the activities in question were surface coal mining was identifying what entity was involved in the operations. Wieder testified that, if A&G had conducted the timber removal and logging activities, or if it had contracted for such work to be performed, then he would have certainly determined that the activities were surface coal mining operations. Similarly, Ian Dye, of OSM's Big Stone Gap office, and Jim Meachem, a reclamation area supervisor with DMME, both testified that when investigating whether activities or operations are surface coal mining operations, it is obviously important to see if a coal company or entity related to a coal company is involved in the operations. Dye made it perfectly clear that his conclusion that the activities were not surface coal mining would have probably been different if MFP had contracted with A&G. However, as discussed earlier, the evidence of record shows that A&G was not connected to the timber removal and logging activities conducted by MFP, as there is no evidence that intimates any coordination or cooperation between A&G and the entities seeking to remove the harvestable timber from the proposed permit area.

The court also reiterates that the plaintiffs concede that they may prevail in this

action only if the court finds that the logging activities that have occurred on the permit area are "coal surface mining operations" as a matter of law. The plaintiffs further concede that, under 30 U.S.C. § 1270(a)(2), the court may compel the Secretary to act only in the "most clear-cut, non-discretionary obligations." Therefore, if the Secretary had discretion to determine whether these logging activities are "coal surface mining operations," the plaintiffs concede they cannot prevail. In this case, the court is of the opinion that the Secretary did have discretion to determine if the activities were surface coal mining and that his determination was reasonable, as it was not plainly erroneous or inconsistent with the regulations. Thus, based upon the specific facts before the court, the Secretary was under no nondiscretionary duty to act. Accordingly, this court agrees with the Magistrate Judge's recommendation and finds in favor of the defendants as to the merits of this case.

### III. Conclusion

For the reasons stated above, the court hereby denies the defendants' motions to dismiss. In addition, as discussed above, since the parties agreed to submit the entire case to the court on the merits, this court will not rule on the competing motions for summary judgment. Instead, the court will simply find in the defendants' favor as to the merits of this case. The preliminary injunction, which was entered by this court on August 4, 2008, is hereby vacated.

An appropriate order will be entered.

-23-

**DATED:**    This 12th day of December 2008.

/s/ Glen M. Williams

THE HONORABLE GLEN M. WILLIAMS
SENIOR UNITED STATES DISTRICT JUDGE